**Mackel HERNDON, Appellant,**

v.

**The STATE of Texas State.**

**No. 2–88–126–CR.**

Court of Appeals of Texas,
Fort Worth.

April 5, 1989.

Tim Curry, Crim. Dist. Atty. and Helen T. Dhooghe Asst. Crim. Dist. Atty., Fort Worth, for State.

Before WEAVER, C.J., and JOE SPURLOCK, II and KELTNER, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Mackel Herndon, appellant, appeals from his conviction by a jury of the offense of aggravated delivery of a controlled substance, amphetamine, of more than 200 grams, but less than 400 grams. Upon appellant's plea of not true, the jury found the State's enhancement paragraphs were true and assessed his punishment at forty-five years in the Texas Department of Corrections.

By a single point of error, appellant urges the evidence is insufficient to sustain the conviction because the State failed to offer any evidence that the substance in question contained any adulterants or dilutants. Appellant contends the State failed to prove the amount of amphetamine delivered exceeded 200 grams.

We affirm.

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *See Flournoy v. State*, 668 S.W. 2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on reh'g).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt

Robert J. Kuhn & Associates, and John C. Kuhn, Austin, for appellant.

beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See id.*

On November 6, 1984, Texas Department of Safety Officer Mike Dunn, while working undercover for the narcotics section, sought to buy amphetamine from appellant. Appellant delivered an amount of amphetamine slightly in excess of half a pound (the product delivered to Dunn weighed 220.18 grams). Dunn mentioned the amphetamine was pink in color and appellant explained that "it was involved in one of the final stages of manufacture that produced the pink color" and assured him "it was of high quality and that it would appear or turn white as soon as it was stepped on [1] or diluted."

At trial, Kay Davis, a Department of Public Safety chemist, testified she weighed and analyzed what appellant had delivered to Officer Dunn, and indicated it contained amphetamine of 76% purity. She categorized that as a high percentage and indicated the usual percentage of amphetamine analyzed by the laboratory is around thirty to forty percent. Ms. Davis, upon being questioned further, indicated the weight of the amphetamine to be 220.18 grams. Officer Dunn testified that amphetamine sold on the streets is normally between six and thirty percent pure and that the drugs delivered to him by appellant would be diluted with an adulterant to make one pound, at half the strength, before it was divided into individual grams for sale on the streets.

Appellant relies on three recent court of criminal appeals cases to support his contention that the evidence is insufficient to support the jury verdict: *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Crim.App.1988); *Engelking v. State,* 750 S.W.2d 213 (Tex. Crim.App.1988); and *Sloan v. State,* 750 S.W.2d 788 (Tex.Crim.App.1988). *Sloan* and *Engelking* are companion cases.

■ Appellant contends that under *McGlothlin* the salient characteristic of a

dilutant or adulterant is its intended use in cutting a controlled substance and therefore elements resulting from the manufacturing process cannot be included within the definition and considered adulterants or dilutants.

It is important to distinguish the differing facts of *McGlothlin, Engelking* and *Sloan* from the facts of the instant case. In *McGlothlin* the item of evidence at the center of the discussion was a flask containing a solution weighing 2,845 grams. *McGlothlin* 749 S.W.2d at 857. Both the State's and the defendant's respective experts agreed the solution was split into two distinct and observable layers; the larger and lower portion was described as an aqueous layer and the smaller portion floating on top of the aqueous layer was identified as an organic layer. *Id.* The State's expert testified the two layers were "significantly different" and do not mix, and the defendant's expert classified the solution as containing two separate layers which do not mix. *Id.* The State's expert testified it was clear the solution was still in the manufacturing process, rather than ready for distribution as a final product. *Id.*

Similarly, *Engelking* and its companion case, *Sloan,* centered around two flasks, one of which contained 3,240 grams of liquid, approximately two grams of which was methamphetamine, and the second contained 300 grams of liquid, .3 grams of which was methamphetamine. *Engelking,* 750 S.W.2d at 214. In *Engelking* a Houston Police Department chemist testified the two flasks contained a very weak methamphetamine solution of 0.05% and .1% respectively. *Id.* He expressed a belief that anyone drinking the solution in either flask would become sick. *Id.* A narcotics analyst called by Engelking at trial indicated the solution in the two flasks were consistent with the waste product that would be produced during the purification process of methamphetamine. *Id.* at 214, 215.

---

**1.** This is apparently street jargon referring to the act of cutting the drug with something to reduce its purity and increase its bulk.

The question in *Engelking* was whether the balance of the seized solutions could be added to the pure methamphetamine so as to exceed 400 grams. *Id.* at 216. The court stated "the record was devoid of any evidence that the remainder of the two solutions contained any substance intended to increase the bulk or quantity of the final product, methamphetamine." *Id.*

In our instant case, appellant delivered a finished product in powder form which was 76% pure. He did not possess a flask containing a solution separated into two separate strata nor did he possess a flask of waste product. He did deliver slightly more than half a pound of amphetamine powder with a pink color. This was delivered as a finished product, not a waste product, and required no additional processing to derive the final product. The statement by appellant and his companion that the product was pink because it was involved in one of the final stages of manufacture is not determinative of the case.

Appellant's transaction involved a sale on the wholesale level of a finished product ready to be cut to increase the volume available for sale at the retail level (the streets). The finished product was 76% pure amphetamine which the testimony indicated to be a high concentration when compared with the purity of the drug sold on the streets. The remaining 24% was delivered as an ingredient in the final product and clearly added to its bulk. In a footnote to its opinion, the *McGlothlin* court noted that "if an agent adds to the bulk of the final product it is included in the total weight as an adulterant or dilutant." *McGlothlin*, 749 S.W.2d at 860 n. 8.

We do not agree with appellant's interpretation of *McGlothlin* as supporting his contention that elements resulting from the manufacturing process cannot be included as adulterants and dilutants. We hold that elements resulting from the manufacturing of a controlled substance which are sold together with and as part of a final product fall within the definition of adulterant and dilutant. As such they are to be included in the total weight. The fact that a substance is a by-product of the manufacturing process will not remove it from the class of items defined as adulterants and dilutants where it is included as part of the final product delivered.

■ Evidence was offered that the powder delivered by appellant was ready for cutting to a full pound for sale on the streets. A rational trier of fact could believe beyond a reasonable doubt the amphetamine was as pure as appellant intended it to be before he sold it and could believe beyond a reasonable doubt, because appellant delivered it as a final product, that the balance of a 76% pure amphetamine powder was an adulterant or dilutant. The jury could therefore consider the entire 220.18 grams when determining whether the State proved the weight alleged of more than 200 grams but less than 400 grams.

Appellant's sole point of error is overruled and the conviction is affirmed.