**Charlane THOMPSON and Patrick E. Thompson, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 1153–90, 1154–90.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 14, 1992.

John H. Hagler and Randy Taylor, on appeal only, Dallas, for appellant.

Thomas B. Sehon, Dist. Atty., Marlin, Robert Huttash, State's Atty., Austin, for the State.

MALONEY, Judge.

A jury convicted appellants of possession with intent to deliver at least twenty-eight grams but not more than four hundred grams of amphetamine. See TEX.REV.CIV. STAT.ANN. art. 4476–15, §§ 4.02(c)(3); 4.031(d)(1) (Vernon Supp.1987).[1] The jury assessed Charlane Thompson's punishment at thirty-five years imprisonment and a $30,000 fine, and assessed Patrick E. Thompson's punishment at fifty years imprisonment and a $30,000 fine. The Tenth Court of Appeals affirmed both convictions in an unpublished opinion. *Thompson v. State*, Nos. 10–88–056–CR, 10–88–057–CR (Tex.App.—Waco, Aug. 30, 1990). We granted appellants' peti-

---

**1.** Now TEX.HEALTH & SAFETY CODE ANN. §§ 481.103(a)(3); 481.113(d)(1).

tion for discretionary review to determine whether the evidence was sufficient to support the convictions.[2] *See* Tex.R.App.P. 200(c)(3). We will reverse the judgments of the Court of Appeals.

On March 19, 1987 law enforcement officers in Falls County executed a search warrant based upon information regarding the presence of amphetamine at a rural residence occupied by appellants. Upon arriving at the residence, the officers arrested three men, including Patrick Thompson, near a shed adjacent to the residence, and they arrested Charlane Thompson inside the residence. The officers searched the residence and nearby buildings and confiscated weapons and controlled substances. The evidence at trial revealed that the total weight of the seized solutions and substances that contained amphetamine was 340.44 grams.[3] The amount of actual amphetamine was not determined. Additionally, the evidence revealed that other substances, not containing amphetamine, contained phenylacetic acid, an ingredient used to make phenylacetone, an immediate precursor to amphetamine. These other substances weighed eight pounds and 15.5 ounces.[4]

2. We also granted appellants' petition's second ground for review to determine whether the prosecutor's remarks during closing argument were improper. Because of our disposition of appellants' first ground for review, we will not address the second.

3. A chemist with the Texas Department of Public Safety testified as to the following exhibits:
 State's Exhibit Number 6 is 239.01 grams of a liquid and powder which contains amphetamine.
 State's Exhibit Number 29 ... is 17.55 grams of a substance which contains amphetamine.
 State's Exhibit Number 118 ... it's 10.80 grams of a powder which contains amphetamine.
 State's Exhibit Number 107 ... is 50.83 grams of a liquid which contains amphetamine.
 State's Exhibit Number 43 is 20.04 grams of a liquid which contains amphetamine.
 State's Exhibit Number 28 ... is 1.74 grams of a powder which contains amphetamine.
 State's Exhibit Number 11 [is] 0.47 grams of a powder which contains amphetamine.

4. The chemist also testified as to the following exhibits:
 State's Exhibit Number 4 ... is three pounds, four and a quarter ounces of a powder which contains phenol acetic acid.

The indictments alleged that appellants "possess[ed] with intent to deliver a controlled substance, namely: amphetamine, of an amount less than four hundred grams but at least twenty-eight grams." The jury charges mirrored the indictments.[5]

Appellants contend that because the indictments did not contain the language "including any adulterants or dilutants", the State had to prove that the amphetamine weighed at least twenty-eight grams.[6] Nevertheless, the Court of Appeals held that the term "controlled substance" by definition includes adulterants and dilutants, therefore "use of the phrase 'including adulterants and dilutants' in the indictment is not necessary, nor is proof of the specific amount of adulterants and dilutants in the quantity of the controlled substance seized." *Thompson*, slip op. at 7.

The Court of Appeals relied upon two cases that were then pending discretionary review before this Court and have since been decided contrary to the Court of Appeals' reasoning in this case. *Farris v. State*, 811 S.W.2d 577 (Tex.Cr.App.1990); *Reeves v. State*, 806 S.W.2d 540 (Tex.Cr.App.1990),

 State's Exhibit Number 80 is three pounds, fifteen and a half ounces of a powder which contains phenol acetic acid.
 State's Exhibit Number 5 ... is one pound, eleven and three quarters ounces of a powder which contains phenol acetic acid.

5. The jury charges stated:
 If you believe from the evidence beyond a reasonable doubt, that [appellants] ... possess[ed] with intent to deliver, a controlled substance, namely: amphetamine, of an amount less than four hundred grams but at least twenty-eight grams, then you will find [appellants] guilty of the offense of possession with intent to deliver a controlled substance, namely: amphetamine, of an amount less than four hundred grams but at least twenty-eight grams. Unless you so believe from the evidence beyond a reasonable doubt, you will acquit [appellants] of the second paragraph in the indictment ...

6. At trial, appellants moved for an instructed verdict on the ground that the evidence did not establish guilt beyond a reasonable doubt as to possession with intent to deliver over twenty-eight grams of amphetamine and therefore the evidence was insufficient to support a verdict of guilty. The trial court overruled the motion.

*cert. denied,* 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). We have held that the term "controlled substance" does not include the phrase "adulterants and dilutants," [7] and that the State cannot utilize the existence of adulterants and dilutants to satisfy the quantity requirement of the offense, unless the indictment alleges adulterants and dilutants.[8] Given that the State is limited by the allegations in the indictment [9] and that the indictments here did not allege "adulterants or dilutants," the State was therefore required to prove that the amount of the amphetamine weighed at least twenty-eight grams.

The Court of Appeals also reasoned that the jury could have considered the amount of the phenylacetic acid in "determining the aggregate weight of the amphetamine, including adulterants and dilutants." *Thompson,* slip op. at 6. Today, we held that immediate precursors can be included in the weight of the controlled substance in prosecutions under the Controlled Substances Act. *Dowling v. State,* 885 S.W.2d at 122 (Tex.Cr. App.1992) (op. on reh'g). Here, the testimony at trial revealed the presence of phenylacetic acid which is one ingredient used to make phenylacetone, an "immediate precursor" to amphetamine, but the record lacks any testimony regarding the presence of phenylacetone in the substance.

The State argues that the Texas Controlled Substances Act prohibits the possession of "any material, compound, mixture, or preparation" containing amphetamine, and therefore the amount of amphetamine within the substance is irrelevant. The State prem-ises its argument on our opinion on original submission in *Dowling v. State,* No. 107–89 (Tex.Cr.App. Mar. 27, 1991). However, on rehearing we withdrew our prior opinion and explained that the indictment must allege that the accused possessed a material, compound, mixture, or preparation containing amphetamine before the State can proceed under such a theory. *Dowling,* 885 S.W.2d at 123–124 (op. on reh'g). Here, the indictments did not allege that theory.

Because there is no evidence that the actual amphetamine weighed at least twenty-eight grams, we find that the evidence is insufficient to support the verdicts. Accordingly, we reverse the judgments of the Court of Appeals and remand this cause to the trial court with instructions to enter judgments of acquittal.

McCORMICK, P.J., concurs in the result.

WHITE and OVERSTREET, JJ., dissent.

CLINTON, Judge, concurring.

The offense is possession with intent to deliver amphetamine in an amount alleged to be 28 grams or more but less than 400 grams, which turned out to be an assortment of materials and things weighing 340.44 grams when and as received at the DPS laboratory.

The aggregate weight is derived from combining respective weights of seven "exhibits" loosely described in note 3 of the majority opinion; at least three of which are kinds of containers capable of holding liquid.[1] Those

---

**7.** *Farris* 811 S.W.2d at 580; *Reeves,* 806 S.W.2d at 545 (footnote omitted). *See also* TEX.REV. CIV.STAT.ANN. art. 4476–15, § 1.02(4) (" 'Controlled Substance' means a drug, substance, or immediate precursor listed in Schedules I through V and Penalty Groups 1 through 4 of this Act."). Now *see* TEX.HEALTH & SAFETY CODE ANN. § 481.002(5).

**8.** *Dowling v. State,* 885 S.W.2d 103, 122 (Tex.Cr. App.1992) (op. on reh'g).

**9.** *Doyle v. State,* 661 S.W.2d 726 (Tex.Cr.App. 1983).

**1.** To supplement descriptions of the "exhibits" listed in note 3, we may glean more information

from the manner each was identified by the court reporter, *viz:*

> No. 6: Kerr pint jar with amber colored residue
> No. 29: 2 plastic bags containing crystal substance
> No. 118: Three vials
> No. 107: White bowl containing brown sticky substance
> No. 43: Two containers with suspected brown substance
> No. 28: Black film container
> No. 11: Brown vial containing white powder

The court of appeals also mentioned testimony of the chemist that "almost nine pounds of the aggregate weight of the above-listed substances was phenylacetic acid;" related exhibits are sim-

"exhibits" were seized from premises of appellants in rural area in Falls County on March 19, 1987. There is no claim that a "speed laboratory" was then on the premises; indeed, we are informed by the opinion below that a "dismantled drug laboratory" was seized in a miniwarehouse in Reisel, McLennan County, on April 8, 1987, leased by appellants on February 23, 1987. Slip opinion, at 14.

In short, this is not a "manufacturing" case. It does involve manufactured products and putative remnants of the manufacturing process, the latter being at least the three "exhibits" weighing in aggregate 309.88 grams of the overall weight of 340.44 grams. The difference of 30.56 grams is 2.56 grams more than 28, and that relatively slight margin between a felony of the second degree and an aggravated offense punishment is enough, in my judgment, to insist that to

edify the factfinder in deliberating on pertinent requirements of law, testimony from chemists and other "experts" must "properly present and prove a criminal violation of the Act." *McGlothlin v. State,* 749 S.W.2d 856, at 859 (Tex.Cr.App.1988).

One significant statutory factor in determining the amount of any controlled substance possessed with intent to deliver is the aggregate weight "including any adulterants or dilutants." §§ 4.03, 4.031 and 4.032. Here the court of appeals recognized the chemist did not testify regarding "the purity or concentration of the amphetamine," but concluded that "use of the phrase 'including adulterants and dilutants' in the indictment is not necessary, nor is proof of the specific amount of adulterants and dilutants in the quantity of the controlled substance seized." Slip opinion, at 6–7.[2] Reserving my position on whether "adulterants or dilutants" must

---

ilarly treated, with quoted comment by the chemist, *viz:*

> No. 4 Glass 1–gal. jug containing white powder; "three pounds, four and a quarter ounces of a powder which contains phenol acetic acid [sic]"
> No. 5. Plastic 1–gal. jug containing white powder; "one pound, eleven and three quarter ounces of a powder which contains phenol acetic acid [sic]"
> No. 80 Plastic jar containing white powder; "three pounds, fifteen and a half ounces of a powder which contains phenol acetic acid [sic]"

2. Along the way the court of appeals reasoned: "... Although the chemist did not testify regarding the purity or concentration of the amphetamine, his testimony reflects that almost nine pounds of the aggregate weight of [substances listed in note 3 of the majority opinion, *ante* ] was *phenylacetic acid,* an *ingredient used to make phenylacetone, 'the direct precursor to amphetamine* and methamphetamine.' Thus, this testimony could have been considered by the jury in determining the aggregate weight of the amphetamine, including adulterants and dilutants." Slip opinion, at 6.

But, of course, a precursor, such as *phenylacetic acid,* to an "immediate precursor" will not alone produce a controlled substance for it is not "an immediate chemical intermediary," § 1.02(20), and would not survive the reflux process of making the "immediate precursor;" similarly, *phenylacetone* would be "used up" in the manufacturing process, thus not only losing its separate identity but also being incorporated into and becoming an integral part of the final product—pure amphetamine—never as an adulterant or dilutant then or thereafter "used in cutting" amphetamine. See § 1.02(15)(F). Moreover, the

particular "nine pounds" of phenylacetic acid the court of appeals would allow the jury to consider in determining the aggregate weight of this amphetamine had not yet been used to make phenylacetone. See Exhibits Nos. 4, 5 and 80, described in note 1, *ante.* Furthermore, contrary to the position restated by the majority opinion in this cause at 4, the weight of "an immediate precursor" such as phenylacetone is not includable in the "aggregate weight" of a controlled substance. See *Dowling v. State,* 885 S.W.2d 103 (Tex.Cr.App.) (Clinton, J., concurring opinion at 129–130).

With respect to adulterants and dilutants, the court first noted:

> "Though not statutorily defined, the terms adulterants and dilutants have been defined by the court of criminal appeals as compounds, substances, or solutions added to the controlled substance to increase the bulk or quantity of the product, as in the present case. See *McGlothin v. State,* 749 S.W.2d 856, 857–58 (Tex.Crim.App.1988). * * * *" *Id.,* at 131–132.

During the course of its discussion in *McGlothin,* however, this Court undertook to determine the "scope" and "meaning" of those terms by taking guidance from the Code Construction Act and ultimately concluding that they "must be read in context of the entire Act and construed according to the particular meaning for which each is intended." *Id.,* at 858–859. Accordingly it began with the definition of "drug paraphernalia" in § 1.02(15)(F), *viz:*

> "(15) 'Drug paraphernalia' means ... a product, or a material of any kind that is used or intended for use in ... compounding, converting, producing, processing, preparing ... a controlled substance [including] but is not limited to: * * * *

be alleged, for the reasons developed in the margin I am convinced that the evidence in this cause is insufficient, and that the court of appeals came to its conclusions mainly on the bases of its premature reliance on *Reeves v. State*, supra, and of its acceptance of testimony and exhibits that failed to illuminate relevant evidentiary matters that must be examined under applicable provisions of the Act to determine sufficiency of the evidence in order for a jury to convict an accused of possession with intent to deliver twenty-eight grams or more of amphetamine. See and compare *Dowling v. State*, 885 S.W.2d 103 (Tex.Cr.App.1992); *Blackmon v. State*, 786 S.W.2d 467, at 470–473 (Tex.App—Houston [1st] 1990) PDR refused; *Herndon v. State*, 767 S.W.2d 510, at 512–513 (Tex.App.—Fort Worth 1989), PDR refused.

Accordingly, I join the judgment of the court.

(F) a *diluent* or *adulterant*, such as quinine hydrochloride, mannitol, mannite, dextrose, or lactose, used or intended for use in *cutting* a controlled substance[.]"

Contrary to the contention of the State that subsection (15)(F) did not attempt to define either "diluent" or "adulterant," we found that every product mentioned shares the common characteristic of being a "cutting agent," and thus indicative of the meaning of "diluent" [or its synonym "dilutant"] and "adulterant," both being similar "in the sense that either can 'cut' a controlled substance;" therefore, "the definition given those terms remains probative as to the Legislature's use of the terms elsewhere in the Act." *Id.*, at 859. After resorting to other defining sources, the Court declared those definitions coupled with § 1.02(15)(F) formed its own definition, *id.*, at 860, which "comports with legislative intent," *id.*, at 861, *viz:* matter added to the controlled substance with the intent to increase the bulk or increase the quantity of the product without affecting its activity. *Id.*, at 860. Thus the essence of our definition in *McGlothlin* is substantially the same as that statutorily provided by the Legislature in § 1.02(15)(F).

   Finally, the court of appeals opined:

   "Moreover, *since the phrase 'controlled substance' includes adulterants and dilutants by definition in the context of the Controlled Substances Act*, no variation exists between the indictments and proof presented at trial. A plain reading of the statute reveals that the *use of the phrase "controlled substance" in the indictment includes adulterants and dilutants.* See ... *Reeves v. State*, 743 S.W.2d 362, 364 (Tex.App.—Fort Worth 1987, pet. granted on rehearing)." *Id.*, at ——.

To the contrary, "controlled substance" means a "substance" listed in Penalty Groups 1 through 4 of the Act, § 1.02(4); Penalty Group 2 lists amphetamine in § 4.02(c)(3), contained in "any material, compound, mixture, or preparation." Those two sections serve to identify "amphetamine" as a "controlled substance," yet neither mentions "adulterants and dilutants." As germane here, the terms do not even appear in sections defining basic *offenses* by reference to penalty groups, i.e., §§ 4.03(a) through 4.044(a); e.g.:

   "[A] person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a *controlled substance listed in Penalty Group 2.*"

Indeed, only in fixing respective punishments for basic offenses and in defining and fixing punishments for respective aggravated offenses according to "the amount of the controlled substance ... by aggregate weight," did the Legislature allude to "including *any* adulterants or dilutants"—meaning, of course, that there may not be "any" of either included—and in the case of "pure amphetamine" intentionally and knowingly there will not be "any." See XVIII S.F. 40.

   Therefore, the *definition* of "controlled substance" does not include "adulterants and dilutants;" whether there are "any" relates primarily to determining applicable range of punishments according to the amount of the particular controlled substance with or without "adulterants or dilutants." To make that determination requires forthright comprehensive *"expert testimony to properly present and prove a criminal violation of the Act."* *McGlothin v. State*, supra, at 859; cf. *Reeves v. State*, 806 S.W.2d 540, at 543–545 (Tex.Cr.App.1990) (absent facts showing remainder of material consisted of substance intended to increase bulk or quantity of final product, amphetamine, cannot be said remainder was adulterant or dilutant).

   All emphasis here and throughout this opinion is mine unless otherwise indicated.