**Willie MURRAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–93–00003–CR.**

Court of Appeals of Texas,
Texarkana.

Sept. 21, 1993.

Rehearing Denied Oct. 26, 1993.

Charles M. Cobb, Mount Pleasant, for appellant.

Willie Murray, pro se.

Leon Pesek, Jr., Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Willie Murray was convicted of possession of less than twenty-eight grams of cocaine. He appeals, contending that the trial court erred in admitting in evidence his post-arrest oral statement, that the cocaine was obtained as a result of an illegal search, that the State failed to prove the chain of custody, and that the court should have quashed the indictment and should have required the State to disclose the identity of a confidential informant. We overrule these contentions and affirm the judgment.

The State's evidence showed that on September 25, 1992, Officer Cory Murray, a member of the Bi–State Narcotics Task Force, received information from a confidential informant that appellant Murray was at that moment in possession of fifty- and hundred-dollar "rocks" of crack cocaine, and was at the Bowie Courts in his brown Mercedes.

Officer Murray and three other members of the task force immediately proceeded to the Bowie Courts in two unmarked cars. Officer Murray and Investigator White were in one car and Officers Eric Roberts and Eddie Smith were in the other. On the way, Officer Murray received a radio call from another member of the task force that the informant had just called a second time and had stated that the Mercedes was now parked on West Eleventh Street and that Murray was now inside or near Apartment 136.

Officer Murray relayed this information to Roberts and Smith, who had already found the Mercedes and set up surveillance. About five minutes later, Officer Murray saw appellant Murray leave Apartment 136, get into the Mercedes, and drive away. Roberts and Smith followed and by radio ordered a patrol car to stop him. Detective Bobby Mixon of

the Texarkana police department responded, stopping Murray at approximately 3:00 p.m. Two other detectives with the Texarkana police department, Curtis Cole and Jim Stuckey, were following Mixon and also stopped. Mixon asked for Murray's driver's license in order to identify him. Murray was not formally arrested or otherwise questioned by the three detectives. Roberts and Smith arrived about a minute later.

Roberts told Murray that they had information that he had drugs in his car. Murray replied that he did not, but that Roberts could look if he wanted to. Roberts and Smith then searched the car. Murray was not frisked or searched, formally placed under arrest, or given *Miranda*[1] warnings at this time. Roberts found what appeared to be crack cocaine hidden in a Diet Coke can which he testified appeared to be empty but which "didn't feel right." Murray was then formally arrested and transported to the Bi–State Justice Building where he was given his *Miranda* warnings.

■ The officers testified that Murray was not questioned before or after his formal arrest and *Miranda* warnings. The only communication between the officers and Murray relevant to this appeal was as follows. While Murray was in the interrogation room, Officer Smith walked into the room and said, "Happy birthday." Murray then said, "Something told me I shouldn't have worked on my birthday." Murray argues that his statement to Smith was the product of custodial interrogation and did not meet the requirements of U.S. CONST. amend. V or TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3 (Vernon Supp.1993). He apparently contends that his statement is incriminating because the jury could have viewed it as an admission that he was selling cocaine ("working").

Article 38.22, § 3 requires strict electronic recording for oral statements made as a result of custodial interrogation. As the State correctly points out, however, Article 38.22, § 3 is qualified by TEX.CODE CRIM.PROC.ANN. art. 38.22, § 5 (Vernon 1979), which states, "Nothing in this article precludes the admis-

sion of a ... statement that does not stem from custodial interrogation, or of a voluntary statement...."

Murray was in custody at the time the statement was made. He had been placed under formal arrest, read his *Miranda* warnings, and was being detained in an interview room on the third floor of the Bi–State Justice Building. The issue is, then, whether the statement was the product of interrogation.

■ Interrogation encompasses any word or action on the part of the officers that they should know is reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). General and routine questions do not constitute interrogation. *Jones v. State*, 795 S.W.2d 171, 174 n. 3 (Tex.Crim.App.1990); *McCambridge v. State*, 712 S.W.2d 499, 505 (Tex.Crim.App.1986). Offhand remarks, not designed to elicit any kind of response, do not constitute interrogation. *Rhode Island v. Innis*, 446 U.S. at 303, 100 S.Ct. at 1690; *Janecka v. State*, 739 S.W.2d 813, 828–29 (Tex.Crim.App.1987).

In this case, Smith, while preparing the arrest report, noticed from the driver's license that it was Murray's birthday and said "Happy birthday" to him. "Happy birthday" is not a question, does not usually require a response, except possibly "Thank you," and appears here to be nothing more than a harmless and insignificant remark. There is nothing in the record to indicate that it was likely to elicit an incriminating response.

The statement by Murray was therefore not the product of custodial interrogation. It was a voluntary statement and was not made in response to any inquiry made by Smith. Neither the Fifth Amendment nor Article 38.22, § 3 bars admission of this statement.

Murray also argues that the trial court committed reversible error in overruling his motion to suppress the cocaine seized from his automobile because it was the product of an illegal search. He raises this point under both the U.S. CONST. amend. IV and TEX. CONST. art. I, § 9. These provisions contain

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

similar language regarding the protection of persons against unreasonable searches and seizures. Until recently, Article 1, Section 9 had been considered as essentially identical to the Fourth Amendment, and the Texas courts had usually followed the United States Supreme Court decisions under the Fourth Amendment when interpreting Article 1, Section 9. *Gordon v. State*, 801 S.W.2d 899, 912 (Tex.Crim.App.1990) (plurality); *Eisenhauer v. State*, 754 S.W.2d 159, 162–64 (Tex.Crim. App.1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988). However, the Court of Criminal Appeals in *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991), overruled these decisions. Accordingly, in our interpretation of Article 1, Section 9 we are not limited to the protections afforded by the Fourth Amendment as interpreted by the United States Supreme Court. *Heitman v. State*, 815 S.W.2d at 690; *Brown v. State*, 830 S.W.2d 171, 174 (Tex.App.—Dallas 1992, pet. ref'd).

The United States and Texas Constitutions both protect persons against unreasonable arrests and searches and seizures by the state. Normally, police officers must first obtain a valid arrest or search warrant based on probable cause. Evidence seized illegally without a warrant may be subject to exclusion at trial. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). There are, however, exceptions to the probable cause and warrant requirements.

■ Without a warrant, and with less than probable cause, a police officer may lawfully stop and detain a suspicious individual in order to briefly question that person regarding his identity, why he is in the area, or to make other reasonable inquiries of a truly investigative nature. To pass constitutional muster, such an investigative detention must be based on reasonable, articulable facts that, in light of the officer's experience and knowledge and reasonable inferences based on the facts, the suspicious person may be connected with criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App.1991); *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App.1987).

■ Once the officer has lawfully detained the suspect, a *limited* search of the individual for weapons may be conducted if reasonably necessary to protect the officer or others. *Terry v. Ohio*, 392 U.S. at 24, 88 S.Ct. at 1881. Such a search may include, if the officers detain the driver of an automobile, a limited search of the passenger compartment of the car for weapons, if reasonable. *Hoag v. State*, 728 S.W.2d at 380.

Whether a court characterizes the detention of an individual as an investigative detention or an arrest is the key threshold issue regarding whether mere reasonable suspicion suffices for the stop or the greater standard of probable cause is required. *Amores v. State*, 816 S.W.2d at 411. As opposed to the brief questioning of a suspect characteristic of the investigative detention, an arrest occurs when a person's liberty of movement is restricted or restrained or when he has actually been placed under restraint. TEX.CODE CRIM.PROC.ANN. art. 15.22 (Vernon 1977); *Amores v. State*, 816 S.W.2d at 411.

■ If the detention constitutes an arrest, then it must be supported by probable cause. Warrantless arrests and searches are subject to the same probable cause standard as those involving warrants. *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 566, 91 S.Ct. 1031, 1035–36, 28 L.Ed.2d 306 (1971); *Rojas v. State*, 797 S.W.2d 41, 43 (Tex.Crim. App.1990).

The analysis of probable cause is based on the "totality of the circumstances" test adopted by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Amores v. State*, 816 S.W.2d at 413; *Whaley v. State*, 686 S.W.2d 950, 951 (Tex.Crim.App.1985).

We find no Texas statute or case requiring a more restrictive standard of review for investigative stops, arrests, or probable cause under Article 1, § 9 than that required under the Fourth Amendment. Subsequent to *Heitman, supra*, where the Court of Criminal Appeals drew the distinction between review of Article 1, § 9 and the Fourth Amendment, the court reviewed the standards for investigative stops under Article 1, § 9 by applying the standards of *Terry v. Ohio, supra*, as adopted by the courts of this

state, without an independent review under state law. *See Davis v. State*, 829 S.W.2d 218 (Tex.Crim.App.1992). Absent any affirmative act of the Texas Legislature or decision by our Court of Criminal Appeals overruling earlier decisions in this area, it appears that the interpretation of Article 1, § 9 is consistent with interpretation of the Fourth Amendment by the United States Supreme Court and the Court of Criminal Appeals. *See Johnson v. State*, 834 S.W.2d 121, 124 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *State v. Grant*, 832 S.W.2d 624, 628 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Cook v. State*, 832 S.W.2d 62, 65 (Tex.App.—Dallas 1992, no pet.).

■ We conclude that the stop and detention of Murray was an arrest. Officers Roberts and Smith both testified at the pretrial hearing on the motion to suppress that Murray was not free to go once he was stopped. Although no guns were drawn and no formal arrest was made, five officers were present. Murray's liberty of movement was clearly restricted, *Amores v. State*, 816 S.W.2d at 411, and he had been actually placed under restraint, TEX.CODE CRIM.PROC.ANN. art. 15.-22. In addition, no questions were asked of Murray other than a statement by Officer Roberts that he had heard or had information that Murray was in possession of drugs, to which Murray stated that he did not but that the officers could look if they wanted to. This stop was not a mere investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Amores v. State*, 816 S.W.2d at 412.

■ We conclude, however, that the officers had sufficient probable cause to make the warrantless arrest and search of Murray. Officer Murray personally received a phone tip from the confidential informant, whom he had found to be reliable in the past. He testified at the pretrial hearing that he had information Murray concealed drugs in a Diet Coke can and officers saw him acting like he was drinking from such a can. The officers corroborated all the information given by the informant before they stopped Murray except whether he actually had the drugs. Officer Murray testified that he did not have time to get a search warrant be-cause the suspect was in a moving car. Thus, the required exigent circumstances existed. The officers were in possession of reasonably reliable information justifying a person of reasonable caution to believe that Murray was committing or was about to commit an offense, i.e., possession of illegal drugs. *See* TEX.CODE CRIM.PROC.ANN. art. 14.03(a)(1) (Vernon Supp.1993); *Amores v. State*, 816 S.W.2d at 413; *Whaley v. State*, 686 S.W.2d 950.

■ Murray argues that probable cause to search a car does not extend to containers in the car, citing *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). *Sanders* was essentially overruled by the Supreme Court in *California v. Acevedo*, 500 U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), where the Court held that probable cause to search a car is probable cause to search containers which may contain contraband.

Murray also argues that since Officer Murray stated that the search was an inventory search, it was improper because the opening of the Diet Coke can violated the requirements for such searches. *See Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The inventory search Officer Murray refers to in his testimony, referenced by Murray's appellate brief, was the inventory search conducted by police after the cocaine was found and the arrest was made. The search that resulted in the discovery of the cocaine was not performed by Officer Murray, and was not an inventory search. Additionally, the evidence supports a conclusion that Murray freely consented to the search.

■ Murray also argues that the cocaine was not admissible because a proper chain of custody had not been established.

■ Absent evidence of tampering, objection that the State has failed to establish a proper chain of custody goes to the weight of the evidence rather than to its admissibility. *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App.1985); *Parr v. State*, 606 S.W.2d 928, 930 (Tex.Crim.App. [Panel Op.] 1980). Where the State shows the beginning

and the end of the custody, any gaps in between affect the weight and not the admissibility of the evidence. *Blackmon v. State,* 830 S.W.2d 711, 713 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Minor theoretical breaks in the chain of custody of a controlled substance do not break the chain. *Mendoza v. State,* 552 S.W.2d 444 (Tex.Crim.App. 1977).

Officer Roberts found the sixteen bags of crack cocaine in Murray's car in the false Diet Coke can. He gave them to Officer Murray at headquarters. Officer Murray marked the cocaine and placed it in a sealed envelope, which was also marked. He handed the envelope to Tina Perry to mail. The only other person to handle the substance was Officer Willie Huff, who, along with Officer Murray, performed a field test on one of the bags of alleged crack cocaine.

After the cocaine had been tested and confirmed as cocaine, Officer Huff picked up the sealed envelope at the lab and took it back to headquarters, where it was locked in the evidence safe and secured until time for trial. Officer Roberts identified State's Exhibit 3 as the cocaine he found in the Diet Coke can and gave to Officer Murray. Officer Murray also identified Exhibit 3 as the cocaine he received from Officer Roberts. He identified the return receipt from the DPS lab. Juan Ortiz, the DPS chemist, stated that he received the envelope that was identified by Officer Murray as the envelope used to send the cocaine to the lab. Ortiz had also marked this envelope. Finally, Officer Huff identified the same envelope (Exhibit 10) as the envelope he picked up from the lab and placed in the evidence safe.

The only person in the chain who did not testify was Tina Perry. Officer Murray testified that his office had a department that took care of mailing envelopes, etc., and that after he had properly tagged, marked, and sealed the envelope he gave it to Perry for mailing.

The State proved the beginning and the end of the chain of custody. The evidence showed that the envelope was mailed, was received by the lab, and the return receipt card was received by the police. There was no evidence of tampering or deficiency in the chain of custody. The failure of Tina Perry to testify, then, goes to the weight and not to the admissibility of the evidence. We find that the chain of custody was sufficient to identify the cocaine and that the court did not err in admitting it in evidence and allowing expert testimony as to its nature.

■ Murray also contends that the trial court erred in refusing to grant his motion to quash the indictment. The indictment charged that Murray possessed less than twenty-eight grams of a controlled substance, including any adulterants and dilutants. Murray argues that he was entitled to notice of the aggregate weight of the cocaine, adulterants and dilutants. He cites no authority for his argument. His only reference to the record is to the testimony of Juan Ortiz, the laboratory chemist for the Department of Public Safety, and in particular, Ortiz's testimony that he did not quantitate the cocaine and the adulterants and dilutants.

■ If the State uses the existence of adulterants and dilutants to satisfy the quantity requirement of an offense, the indictment must allege the presence of adulterants and dilutants as well as the controlled substance. *See Thompson v. State,* Nos. 1153–90, 1154–90, 1992 WL 278699 (Tex.Crim.App. Oct. 14, 1992). When such adulterants and dilutants constitute part of the weight used to increase punishment, the State must show the identity of the named illegal substance, the weight of the named substance and any proven adulterants and dilutants, and that the added remainder has not affected the chemical activity of the named illegal substance or been added to the substance to increase its bulk or the quantity of the final product. *Dowling v. State,* No. 107–89, 1992 WL 278415 (Tex. Crim.App. Oct. 14, 1992); *Cawthon v. State,* 849 S.W.2d 346 (Tex.Crim.App.1992).

In this case, Murray was not charged with an offense where the weight of the adulterants and dilutants is used to increase punishment. He was charged with possession of a controlled substance including adulterants and dilutants of less than twenty-eight grams. The evidence showed that the substance, which weighed a total of 16.45 grams, contained cocaine. Murray cites no authority

for the proposition that the State must quantitate the cocaine, adulterants and dilutants when the amount charged does not increase punishment. There is no legal or logical reason to require the State to do so in such a case. The trial court did not err in overruling Murray's motion to quash the indictment.

 Finally, Murray argues that the trial court erred in overruling his motion to discover the identity of the informant. He states that TEX.R.CRIM.EVID. 508 entitled him to disclosure and the denial of this request constitutes reversible error.

Until the enactment of Rule 508, disclosure of an informant was not required unless the informant (1) participated in the offense, or (2) was present at the time of the offense or arrest, or (3) was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the offense charged. *Rodriguez v. State*, 614 S.W.2d 448, 449 (Tex.Crim.App. [Panel Op.] 1981). Rule 508 narrowed the privilege. Rule 508(c)(2) requires disclosure when the testimony of the informant is "necessary to a fair determination of the issue of guilt, innocence," although the original three requirements are still factors that the court should consider. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App.1991). If it appears from the evidence or from other showing that the informer may be able to give such relevant testimony, an *in camera* hearing is required where the State has the opportunity to show that the testimony is not necessary to a fair determination of the issues of guilt and innocence. In addition, Rule 508(c)(3) requires an *in camera* hearing where information from an informant is used to establish probable cause, and the judge is not satisfied that the informant was reasonably believed to be reliable or credible.

 Under Rule 508(c)(2), the informant's potential testimony must specifically be relevant to guilt or innocence for disclosure of the informant to be required. Mere supposition or conjecture concerning possible relevance is not sufficient. *Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App.1991). The defendant has the threshold burden of demonstrating this potential significance, but because he may not know the nature of the informant's testimony, he need only make a plausible showing about how the information may be important. *Id.* The mere filing of a Rule 508 motion is not sufficient to obtain a hearing on the motion or disclosure. *Id.*

We find that the trial court did not err in refusing to hold an *in camera* hearing or order disclosure. The evidence at the pretrial hearing showed that the informant did not sell or buy drugs from Murray. The informant did not personally observe drugs in Murray's car or know exactly where in Murray's car the drugs were kept. The informant was not present at the time of the offense or the arrest, in Murray's car, or in Apartment 136 the day of the arrest. The informant had not given information about Murray on any prior occasion. The officers who found Murray in possession of drugs testified at the pretrial hearing and at trial. The informant's testimony, because he was not present during the commission of the crime or the arrest, would have added nothing. Indeed, since such testimony would have related to events preceding the offense on trial, they would probably have been inadmissible as showing extraneous offenses. Murray contends that there is a conflict between where the informant said the cocaine was located—in Murray's pocket—and the observations of the officers. Where the cocaine was located, whether on Murray's person or in his car, is not significant. As noted, the informant's testimony regarding where Murray actually had the cocaine before he was stopped would probably have not been admissible, so it can hardly be considered necessary to a fair determination of guilt or innocence. *See Edwards v. State*, 813 S.W.2d 572, 580 (Tex.App.—Dallas 1991, pet. ref'd).

The trial court properly overruled the motion to require disclosure of the informant.

We have considered and discussed the contentions raised in Murray's pro se brief along with those raised in his attorney's brief. We find them to be without merit.

For the reasons stated, the judgment of the trial court is affirmed.