

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00152-CR

_____

JACORY DEWAYNE BUSSEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 145th District Court
Nacogdoches County, Texas
Trial Court No. F1219308

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Based on a tip from a confidential informant, authorities obtained a "no knock" warrant to search a Nacogdoches County[1] residence rented by Melanie Arnold, the mother of Jacory Dewayne Bussey's two young children. Bussey was inside the residence when police officers discovered marihuana and cocaine scattered throughout the house. At trial, Bussey admitted that the marihuana was his, but disclaimed ownership of the cocaine. A jury convicted Bussey of possessing both cocaine (in an amount of four grams or more but less than 200 grams) and marihuana (in an amount of five pounds or less but more than four ounces). Pursuant to the jury's finding of "true" on the State's enhancement allegations, Bussey (1) was sentenced to eighteen years' imprisonment and ordered to pay a $5,000.00 fine for the possession of cocaine and (2) was sentenced to two years' confinement in a state jail facility for the possession of marihuana.

On appeal, Bussey argues that the evidence is legally insufficient to support the jury's verdict that he possessed cocaine because (1) the drugs were not located at his residence, (2) his fingerprints were not found on the packaging enclosing the drugs, and (3) he denied possessing the cocaine. Bussey also argues that the trial court erred in refusing to require the State to disclose the name of the confidential informant who provided information leading to his arrest. We find that the evidence was legally sufficient to sustain Bussey's conviction of possession of

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

cocaine and that Bussey failed to preserve his point of error relating to disclosure of the confidential informant's identity. Consequently, we affirm the trial court's judgments.

## I. The Evidence Was Legally Sufficient to Support Bussey's Conviction of Possession of Cocaine

Bussey concedes that there was legally sufficient evidence to support the conviction for possession of marihuana. In evaluating legal sufficiency to determine whether any rational jury could have found possession of cocaine beyond a reasonable doubt, we will review all the evidence in the light most favorable to the jury's verdict. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J, concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

3

Looking at the elements of the offense with which he was charged, it was the duty of the State to prove that (1) Bussey (2) intentionally or knowingly (3) possessed cocaine (4) in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(d) (West 2010). "To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2013). Here, Bussey claims only that the State was unable to prove that the cocaine belonged to him.

Sean Murray, a Nacogdoches deputy constable, testified that a confidential informant participated in a controlled buy and reported that he purchased methamphetamine from Bussey at the residence rented by Arnold.[2] Based on the confidential informant's statement, Officer Rusty Allen authored an affidavit to support his application for a "no knock" search warrant. The search warrant was issued after a magistrate's determination that probable cause supported the search.

Murray, Allen, Nacogdoches County Sheriff Jason Bridges, and Stephen Godfrey, a chief deputy with the Nacogdoches County Sheriff's Office, were among the officers who participated in executing the "no knock" search warrant. Godfrey testified that upon entering the residence, he witnessed evidence of heavy drug use. According to Godfrey, ash trays containing marihuana cigar butts were strewn about, and the house smelled strongly of marihuana.

---

[2]There was video recorded surveillance of the controlled buy, but the recording was not introduced at trial.

After entry, the officers' first objective was to secure the residence. Bridges and Murray found Bussey, Arnold, and their two small children asleep in the master bedroom of the house. Bridges restrained Bussey and Arnold while other officers searched the house. Bussey, who testified in his own defense, stated, "I told [an officer] that I had a pound of marihuana in the bedroom, the top drawer on the right." Following Bussey's directions, Murray found this marihuana in a nightstand drawer. Murray also found another bag of marihuana on top of the master bedroom dresser and recovered a gun that was hidden under the mattress where Bussey had been sleeping.

Allen and Godfrey searched the kitchen. Godfrey located marihuana concealed in a cookie tin and found a large quantity of crack cocaine and powder cocaine inside a Girl Scout cookie box. Allen discovered crack cocaine in a drawer under the microwave. Marihuana cigars and a cigar box of marihuana "shake," which consisted of seeds and loose marihuana, was also found in the living room. Allen also searched the children's room and found ten small marihuana plants growing in the children's closet. Another weapon was also retrieved from the residence. Bussey and Arnold were arrested, and officers found methamphetamine on Arnold's person after searching her at the jail.

At trial, Bussey admitted that he smoked marihuana all day every day, that he routinely purchased marihuana for his own consumption, and that he knew the various stashes of marihuana throughout the residence. The officers' trial testimony, bolstered by Bussey's admissions, was sufficient to prove that the plant substance recovered in the search was marihuana. *See Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977). Karen Collins, a

5

forensic drug chemist for the Texas Department of Public Safety Crime Laboratory in Tyler, Texas, testified that she weighed ten plastic bags containing plant material and determined that the gross weight of the material and the bags together was 1.40 pounds. Collins weighed three more bags containing plant material, which yielded a gross weight of 454.58 grams. Collins also tested the white powdery and crystalline substances retrieved from the residence and confirmed that they were cocaine and crack cocaine. In total, the cocaine substances weighed 9.62 grams.

Bussey researched the law and learned that given the amounts alleged in the State's indictments, the possession of cocaine charge carried a significantly higher range of punishment than the possession of marihuana charge. Although Bussey admitted at trial that the marihuana was his, he disclaimed ownership of any cocaine. Bussey explained that his mother lived close by, that he lived with his mother "off and on," and that the cocaine could belong to someone else. Bussey's mother, Debra Ann Mosley, confirmed that Bussey lived with her on occasion.

Bussey argues that there is no evidence that he possessed the cocaine because (1) the cocaine could have been Arnold's since (a) the home was rented by her, and (b) he did not live exclusively at the residence, (2) no cocaine was found on his person, (3) his fingerprints were not found on the cocaine packages (no fingerprint testing was conducted), and (4) he testified that the cocaine was not his.

Possession may be established by proving either actual or constructive possession. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Further, it is well established that an accused may jointly possess contraband with another and that possession need not be exclusive. *Id.* However, mere presence at the location where drugs are found is

6

insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. Presence or proximity to drugs when combined with other direct or circumstantial evidence, on the other hand, may be sufficient to establish control, management, custody, or care provided the proof amounts to more than a strong suspicion. *Id.*

Unless the accused had exclusive possession of the place where the controlled substance was found, the State must present "additional independent facts and circumstances which affirmatively link the accused to the contraband" in order to prove possession beyond a reasonable doubt. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981); *see Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

A nonexclusive list of affirmative links that can be sufficient, either singly or in combination, to establish possession of contraband includes: (1) presence when a search is conducted, (2) whether the contraband was in plain view, (3) proximity to and the accessibility of the contraband, (4) being under the influence of narcotics when arrested, (5) possession of other contraband or narcotics when arrested, (6) making incriminating statements when arrested, (7) attempting to flee, (8) the making of furtive gestures, (9) the presence of an odor of contraband, (10) the presence of other contraband or drug paraphernalia, (11) the ownership of or the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) possession of a large amount of cash, (14) conduct indicating a consciousness of guilt, (15) the quantity of the contraband, and (16) the accused's presence in a

7

suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd); *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.); *see Jones*, 963 S.W.2d at 830.

When the search in this case was conducted, Bussey was present in the enclosed residence where drugs had recently been purchased by a confidential informant. Marihuana, not cocaine, was found in plain view. However, because Bussey testified that he often stayed with Arnold, the mother of his children, the cocaine was accessible to him. Yet, Bussey's testimony demonstrated his accessibility to the cocaine. According to Bussey, he told officers that he had "an ounce and a half of what they referred to as cush [marihuana] in the kitchen drawer up under the microwave." No marihuana was found in this drawer. Instead, this drawer contained a bag of cocaine. While there was no testimony that Bussey was under the influence of narcotics when he was arrested, Bussey testified that he smoked marihuana all day every day. Large quantities of marihuana and cocaine, along with weapons, and multiple plastic bags were found throughout the house. Bussey told officers where to find marihuana and further incriminated himself when he mistakenly directed them to the kitchen drawer containing cocaine. Given that the "no knock" search warrant was executed while Bussey was sleeping, there was no opportunity for him to flee or make furtive gestures.

The number of links is not dispositive; rather, we look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see Taylor v. State*, 106 S.W.3d

8

827, 831 (Tex. App.—Dallas 2003, no pet.) (holding that number of links is less important than degree to which links tend to connect defendant to controlled substance). We find that the evidence established a number of affirmative links between Bussey and the cocaine recovered during the search. More importantly, we find that the logical force of these links, taken together, has a very strong tendency to connect Bussey to the cocaine.

Bussey's denial of the ownership of the cocaine required a resolution of conflicting evidence, as well as an evaluation of witness credibility and the weight to be given to their testimony. These are functions left to the jury's sole discretion. *See Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). While the record may demonstrate that Bussey disclaimed ownership of the cocaine, the jury was free to discount Bussey's testimony, especially since his own testimony indicated that he inadvertantly directed officers to the location of a bag containing cocaine. Thus, the logical force of the evidence supports an inference of conscious possession of cocaine.

We find that there is ample evidence to support the jury's finding that Bussey knowingly possessed cocaine in the amount alleged in the State's indictment. Accordingly, we find the evidence legally sufficient to support Bussey's conviction of possession of cocaine. We overrule his first point of error.

## II.     Bussey Did Not Preserve his Argument that Rule 508(c)(2) Required Disclosure of the Confidential Informant's Identity

We review a trial court's denial of a request for disclosure of a confidential informant's identity for abuse of discretion. *Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We affirm the ruling unless the trial court's decision was so clearly

wrong as to lie outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our judgment for that of the trial court; rather, we must decide whether the trial court acted arbitrarily or unreasonably without reference to any guiding rules or principles. *Id*. at 380.

Under the Texas Rules of Evidence, the State has a "privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer . . . ." TEX. R. EVID. 508(a). However, there are exceptions to that privilege. Under Rule 508(c)(2), disclosure may be required "[i]f it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony . . . on guilt or innocence in a criminal case . . . ."[3] TEX. R. EVID. 508(c)(2). Under Rule 508(c)(3), disclosure may be required "[i]f information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the court is not satisfied that the information was received from an informer reasonably believed to be reliable or credible . . . ." TEX. R. EVID. 508(c)(3).

---

[3]"If it appears . . . the informer may be able to give . . . relevant testimony [as to guilt or innocence], an in camera hearing is required where the State has the opportunity to show that the testimony is not necessary to a fair determination of the issues of guilt and innocence." *Murray v. State*, 864 S.W.2d 111, 118 (Tex. App.—Texarkana 1993, pet. ref'd). In making this determination, courts consider whether the informant participated in the offense, was present at the time of the offense or arrest, or was otherwise shown to be a material witness either to the transaction or to whether the defendant knowingly committed the offense charged. *Id*.

10

During Bridges' cross-examination, Bussey asked him to identify the confidential informant who provided information leading to the execution of the search warrant.[4] The State objected to the question, prompting the trial court to dismiss the jury and conduct a hearing on the matter. At this hearing, Bussey argued,

> Your Honor, it's our belief that this does fall under 508(C)(3), that the information from the informer is relied upon to establish the legality of the means by which the evidence was obtained. And, there has been no -- and, I understand, that there's a determination by the magistrate that the witness was credible, but there seems to be only just boiler plate allegations, or recitations, that the confidential informant was of a known reliability. There is just summary and conclusory statements that the affiant believes the C.I. to be reliable, nor is there any indication that the C.I. has proven to be reliable in providing information with other cases.
>     This goes to the heart of the defense's case in chief in terms of the legality of the search. And, also, the, there is a discrepancy between the evidence that was alluded to in the warrant to gain justification to enter into the house versus the evidence that was recovered, and is evidenced by the search warrant inventory return. And, so, for that reason, I think that it is necessary and material that the informer's identity be disclosed at this time.

After Bussey confirmed that he had no additional grounds to advance in support of his claim of entitlement to the confidential informant's identity, the trial court denied Bussey's request, stating, "I don't think that it meets the requisites under . . . 508(c)(3)."

On appeal, Bussey does not argue that the trial court's ruling under Rule 508(c)(3) was improper.[5] Instead, Bussey now contends that the trial court should have required disclosure

---

[4]Bussey did not challenge the issuance of the search warrant itself and did not seek to suppress evidence obtained as a result of its execution.

[5]"Rule 508(c)(3) requires an in camera hearing where information from an informant is used to establish probable cause, and the judge is not satisfied that the informant was reasonably believed to be reliable or credible." *Murray*, 864 S.W.2d at 118. The issue is not whether the parties or the trial court might now believe or disbelieve the informant or whether the informant, in hindsight, proved himself unreliable or mistaken as to certain facts. *See Ashorn v. State*, 802 S.W.2d 888, 892 (Tex. App.—Fort Worth 1991, no pet.); *Thompson v. State*, 741 S.W.2d 229,

11

under the Rule 508(c)(2) exception.  The record demonstrates that Rule 508(c)(2)'s exception was not the ground which was argued at trial.[6]  It is well established that an issue raised on appeal must be the same issue raised by motion or objection asserted at trial.  TEX. R. APP. P. 33.1(a); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (holding nothing preserved for review if issue on appeal does not comport with objection at trial).  The objection must "'let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'"  *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).  Bussey raised no argument below regarding the confidential informant's ability to provide testimony relevant to the determination of his guilt/innocence.[7]  Therefore, Bussey's second point of error on appeal, based on an argument which the trial court did not have the opportunity to review, was not preserved.

---

231 (Tex. App.—Fort Worth 1987), *pet. ref'd*, 763 S.W.2d 403 (Tex. Crim. App. 1989).  Rather, the issue is whether the trial court was satisfied that the informant was reasonably believed to be reliable or credible when the application for the search warrant was made.  *See Ashorn*, 802 S.W.2d at 892; *Thompson*, 741 S.W.2d at 231.

[6]Although a motion for new trial was filed, it raised no complaint relating to disclosure of the confidential informant's identity.

[7]Moreover, if the informant's information is used only to establish probable cause for a search warrant and the informant was neither a participant in the offense for which the accused was charged, nor present when the search warrant was executed, the identity of the informant need not be disclosed because the testimony is not essential to a fair determination of guilt/innocence.  *Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

### III.    Conclusion

We affirm the trial court's judgment.

                                        Bailey C. Moseley
                                        Justice

Date Submitted:     February 25, 2014
Date Decided:       April 9, 2014

Do Not Publish