Rivera v. State 

IN THE
TENTH COURT OF APPEALS
 

No. 10-93-108-CR

     JUAN JOSE RIVERA,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 339th District Court
Harris County, Texas
Trial Court # 595,462
                                                                                                    

O P I N I O N
                                                                                                    

      This is an appeal by Appellant Rivera from his conviction for possession with intent to deliver
400 grams of cocaine, for which he was assessed thirty-five years in the Institutional Division of
the Texas Department of Criminal Justice and a $20,000 fine.
      Officer Wood of the Houston Police Department first heard of Appellant from Joseph Hall,
a person he had arrested for possession of cocaine. Hall told Officer Wood that Appellant had
large quantities of cocaine, and that Officer Wood could listen in as he set up a drug deal with
Appellant on the phone. Wood listened as Hall called Appellant and asked to buy half a kilo of
cocaine. The time was approximately 4:00 P.M. on April 18, 1991. Wood verified that the
number dialed belonged to a body shop owned by Appellant. Hall gave Wood a description of
Appellant which Wood verified from Appellant's rap sheet. Hall made a second call to Appellant
firming up the sale at 4:30 P.M. At that time Wood was at the body shop conducting a personal
surveillance to verify Hall's information and was informed of the call. At 6:00 P.M. Appellant
left the body shop and drove to his house. Appellant entered the house carrying nothing and
exited a few minutes later carrying a small brown paper bag. Wood testified that the small bag
was consistent with a package that could contain a half kilo of cocaine. Appellant then got into
his car and drove in the direction of where he had agreed to take the cocaine.
      Officer Wood called and had Appellant stopped by a patrol unit. Wood then recovered the
bag which was on the passenger seat of Appellant's car. The bag contained 466 grams of cocaine. 
A further search of the car revealed another bag which contained 161 grams of cocaine. 
      Trial was before the court. Appellant filed a motion to suppress the admission of the cocaine,
which was denied by the trial court. Appellant's counsel stipulated "everything except to the
admission of the cocaine." "I stipulate the care, custody and control and that it is indeed cocaine." 
The trial court then admitted the cocaine. 
      As noted, the court found Appellant guilty and assessed his punishment at 35 years
confinement and a $20,000 fine.
      Appellant appeals on one point of error: "The trial court reversibly erred in overruling the
Appellant's motion to suppress in light of the fact that the Appellant's warrantless arrest
contravened Article 14.04, Vernon's Annotated Code of Criminal Procedure, and the resulting
search and seizure violated Article 38.23, Vernon's Annotated Code of Criminal Procedure."
      Article 14.04 provides: "Where it has been shown by satisfactory proof to a peace office,
upon the representation of a credible person, that a felony has been committed, and that the
offender is about to escape, so that there is no time to procure a warrant, such peace officer may,
without a warrant, pursue and arrest the accused."
      Article 38.23 provides: "No evidence obtained by an officer or other person in violation of
any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the
United States of America, shall be admitted in evidence against the accused on the trial of any
criminal case."
      Appellant contends that since there was no evidence Appellant was about to escape, that his
warrantless arrest was illegal, [Article 14.04], and that the admission of the cocaine was thus
precluded by Article 38.23.
      Article 14.04 is not the exclusive criterion for, or the only authorization, for a warrantless
arrest. 
      Article 14.03 provides that a peace officer may arrest, without a warrant, persons found in
suspicious places and under circumstances which reasonably show that such persons are guilty of
a felony.
      And, the requirement of a search warrant may be excused in the case of a moving vehicle if
there is probable cause for the stop and for the search. Gill v. State, (Tex. Crim. App.) 625
S.W.2d 307, 310; Christopher v. State, (Tex. Crim. App.) 639 S.W.2d 932, 935.
      The court must determine whether the officer possessed probable cause by determining
whether, given all the known circumstances, a person of reasonable caution would be warranted
in the belief that contraband or evidence might be found in the vehicle. Amores v. State, (Tex.
Crim. App.) 816 S.W.2d 407; Vargas v. State, (Tex. App.—El Paso) 852 S.W.2d 43, 46; Murray
v. State, (Tex. App.—Texarkana) 864 S.W.2d 111, 116. In Murray, supra, the court found that
the police officers had probable cause for a warrantless arrest and search of a driver of a vehicle
after receiving a phone tip from a confidential informant, found to be reliable in the past, that the
driver was transporting alleged drugs. 
      In this case Officer Wood had ample probable cause to believe that Appellant was carrying
cocaine in his vehicle. First, he heard Hall make the initial telephone call setting up the deal and
was informed of the second call which established the time for the sale. Second, Wood
immediately set up surveillance on Appellant's business, had verified Hall's description of
Appellant, the type of car he possessed, and where his work place was. His continued surveillance
confirmed Appellant's departure to his home at the predicted time, his retrieval of a small paper
bag consistent with carrying a half kilo of cocaine, and his driving in the direction of the arranged
location for the sale.
      As soon as the above facts were verified, Appellant's car was stopped and the brown paper
bag seized. We hold that probable cause existed for the stopping of Appellant's vehicle, and for
the seizure of the cocaine found in the front seat. 
      Appellant's point is overruled and the judgment of the trial court is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Thomas,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed July 6, 1994
Do not publish

riminal case must be unanimous.[3]
Tex. Const. art. V, 13; Tex. Code Crim. Proc. Ann. art.
36.29(a) (Vernon Supp. 2005). A unanimous jury verdict ensures that the jury
agrees on the factual elements underlying an offense, requiring more than
mere agreement on a violation of a statute. Francis v. State, 36
S.W.3d 121, 125 (Tex. Crim. App. 2000). However, a trial court may submit a
disjunctive jury charge and obtain a general verdict where the alternate
theories involve the commission of the same offense. Id. at 124; Kitchens
v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Because of the
possibility of a non-unanimous jury verdict, separate offenses may not be
submitted to the jury in the disjunctive. Francis, 36 S.W.3d at 124-25.

In his first issue in both appeals,
Gonzales asserts that under this charge, he was deprived of his right to a
unanimous jury verdict because the jurors were not required to unanimously
agree on which act or acts of assault Gonzales committed. See Ngo v. State,
175 S.W.3d 738, 745-48 (Tex. Crim. App. 2005) (holding that egregious harm
occurred when, among other things, prosecutor twice told jury that it could
convict even if verdict was not unanimous); Francis, 36 S.W.3d at
123-25. The State argues that the charge was correct because Gonzales was
charged in the indictments with various manner and means of committing one
offense of aggravated assault.[4]
Thus, we must determine whether the jury charge in this case merely charged
alternate theories of committing the same offense or whether the jury charge
included two or more separate offenses charged disjunctively.

The offense of aggravated assault can
be committed in at least three separate and distinct ways:

 Intentionally,
 knowingly, or recklessly causing serious bodily injury to another. Tex. Pen. Code Ann. 
 22.01(a)(1), 22.02(a)(1) (Vernon Supp. 2005).

 

 Intentionally,
 knowingly, or recklessly causing bodily injury to another, and using or
 exhibiting a deadly weapon during the commission of the assault. Id. 22.01(a)(1), 22.02(a)(2).

 

 Intentionally
 or knowingly threatening another with imminent bodily injury to another,
 and using or exhibiting a deadly weapon during the commission of the
 assault. Id. 
 22.01(a)(2), 22.02(a)(2).[5]

 

The commission of multiple discrete
assaults against the same victim results in liability for separate prosecution
and punishment for every instance of such criminal misconduct. Vernon v. State, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992); see, e.g.,
Ex parte Thurmon, 822 S.W.2d 170, 170-71 (Tex. Crim. App. 1991) (defendant
who sexually assaulted victim in one county, then drove her to another county
and sexually assaulted her again, could be prosecuted for both acts, which were
separate and independent offenses); Archie v. State, 181 S.W.3d 428,
430-31 (Tex. App.Waco 2005, pet. filed) (because indictment alleged and
evidence showed two separate, distinct assaults, State was not required to make
election and double jeopardy was not invoked);[6]
David v. State, 808 S.W.2d 239, 240-44 (Tex. App.Dallas 1991, no pet.)
(defendants two aggravated sexual assault convictions for conduct
on same day in allegedly penetrating victims sexual organ and victims mouth
by his sexual organ were not for same offense) (A defendant can, however, rape
an individual, kidnap that person, and rape the same victim again on the same
day, constituting three separate offenses.).

The Austin Court of Appeals recently addressed a similar factual
and procedural situation in which the defendant was indicted for two counts of
aggravated assault: the first count alleged bodily injury assault aggravated
by the use of a deadly weapon, with three paragraphs alleging different manners
and means; and the second count alleged assault by threat aggravated by the use
of a deadly weapon, with two paragraphs alleging different manners and means. See Marinos v. State, --- S.W.3d ---, ---, 2006
WL 66435, at *2 (Tex. App.Austin Jan. 13, 2006, no pet. h.). In a single
application paragraph, the trial court authorized the defendants conviction on
any or all of the five paragraphs contained in the two counts, and the jury
returned a general verdict convicting the defendant of aggravated assault as
alleged in the indictment. Id. On the defendants complaint that the
jury charge and verdict form denied his right to a unanimous verdict, the court
concluded that bodily injury assault and assault by threat are different
criminal acts for which a defendant may be convicted only by a unanimous finding
of guilt. Therefore, even though the State sought only a single
aggravated assault conviction, it was error for the trial court to authorize
that conviction without requiring the jury to unanimously agree that appellant
committed aggravated bodily injury assault or aggravated assault by threat. Id. at ---, 2006 WL 66435, at *4. The court explained:

Similarly,
causing bodily injury to another and threatening another with
imminent bodily injury are separately defined statutory criminal acts. Tex. Pen. Code Ann. 22.01(a)(1), (2).
Bodily injury assault is a result of conduct offense that can be committed
intentionally, knowingly, or recklessly. Fuller v. State, 819 S.W.2d
254, 255-56 (Tex. App.Austin 1991, pet. refd). Assault by threat is a nature
of conduct offense that can only be committed intentionally or knowingly. Guzman
v. State, 988 S.W.2d 884, 887 (Tex. App.Corpus Christi 1999, no pet.). See
Tex. Pen. Code Ann. 6.03 (West
2005) (defining culpable mental states).

 

Id.

 

We likewise conclude that the two indictments allege four
different, separate criminal acts, and the evidence at trial supports our
conclusion. Count
3 in the first indictment alleges that Gonzales committed aggravated assault by
cutting the complainants back with a knife. Count 4 alleged aggravated
assault by Gonzaless threatening the complainant with imminent bodily injury
with a knife. The second indictment alleged in the first paragraph that
Gonzales committed serious bodily injury aggravated assault by striking the complainant
with his hand or elbow. The second paragraph alleged aggravated assault by
Gonzaless striking or strangling the complainant with this hand, which was
used as a deadly weapon.

 Listing both cause numbers
at the top of the page, the trial court incorrectly submitted one general
verdict form on the four separately charged acts of aggravated assault, without
a unanimity instruction requiring all twelve jurors to find him guilty of the
same act. Because the two indictments charged four separate offenses, error
occurred in allowing for a non-unanimous verdict. Furthermore, because the
jury was given only a single verdict form, we cannot tell whether the jury
found him guilty based on one allegation, two allegations, three allegations,
or four, even though the single verdict form has resulted in two judgments of
conviction.

Under Ngo, the error depriving
Gonzales of his right to a unanimous verdict is of constitutional magnitude. Ngo,
175 S.W.3d at 752 (We therefore agree that appellants constitutional and
statutory right to a unanimous jury verdict was violated); see Ex parte
White, --- S.W.3d ---, --- n.38, 2006 WL 475313, at *8 n.38 (Tex. Crim.
App. Mar. 1, 2006) (stating that jury charge error in Ngo was
constitutional). However, an unpreserved complaint about a charge error in a
criminal case is reviewed for egregious harm. Almanza v. State, 686
S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (op. on rehg). Because trial
counsel did not timely object to the charge, Gonzales must show that he
suffered egregious harm, a difficult standard that is determined on a
case-by-case basis.[7]
Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Errors
that result in egregious harm are those that affect the very basis of the
case, deprive the defendant of a valuable right, or vitally affect a
defensive theory. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App.
1996) (citing Almanza, 686 S.W.2d at 172). The harm to Gonzales must be
actual, not just theoretical. Almanza, 686 S.W.2d at 174. In deciding
whether egregious harm exists, we look at (1) the charge itself, (2) the state
of the evidence, including contested issues, (3) the arguments of counsel, and
(4) any other relevant information revealed by the record of the trial as a whole.
Hutch, 922 S.W.2d at 171; see Ngo, 175 S.W.3d at 749.

In voir dire, the State commented on
the various allegations in the indictments: All these offenses are alleged to
have occurred within the same time period. Really they are just different ways
of charging, legal theories of charging the things that allegedly happened that
night. So it is all one set of events. The State then summarized the two
allegations of aggravated sexual assault and the four allegations of aggravated
assault and concluded: So again we allege that all these things happened in
one criminal episode. And it will be up to the jurors after they hear the
evidence to determine which, if any, of those things they want to convict the
defendant of.

In closing argument, the State
commented as follows on the above-quoted aggravated assault application
paragraph:

I would like to point out one thing to
you. On Page Nine it talks about the offense of aggravated assault. Okay. If
you heardas you heard the Judge read to you earlier, there are several
different manner and means that were alleged how that aggravated assault
occurred. Okay.

 

There was he threatened her with bodily
injury, exhibited a knife. Or he recklessly caused serious bodily injury by
striking her with his hand and elbow. Or he then and there intentionally,
knowingly, and recklessly caused bodily injury by striking or strangling her
with his hand.

 

I want to point out, make sure you look
where the semi colons are. This is saying or, or, or. You dont have to find
all of that true in order to find the defendant guilty of aggravated assault.
These are all different manners and means that have been alleged by the State.
There is just one aggravated assault here. It was alleged in different ways
for it to have occurred. And you must agree that he is guilty of aggravated
assault.

 

Thus, in both voir dire and closing
argument, the State referred to the charge error, but the States comments did
not rise to the level of accentuation of the error that occurred in Ngo.
There the court noted that during voir dire, the State,
with respect to three disjunctively joined credit-card-abuse offenses, told jurors [I]f three of you . . . feel like he stole the
credit card and used it, six of you think that he received it and three of you
think he presented it, it doesn't matter which one you think he did. It can be
a mix and match, whichever one you believe. Ngo, 175 S.W.3d at 750.
Moreover, in Ngo the court noted that during the defendants voir dire,
when defense counsel attempted to assert that the State must prove all three
criminal acts, the State objected, and the trial court told the jurors: Theres
three ways alleged that the offense can be committed. . . . [T]he State may
prove one to the satisfaction of part of the jury, another one to the
satisfaction of others, the third one to the satisfaction of another part of
the jury. Id.
Thus,
in addition to the trial courts and States misstatements at the very end of
the trial, the court in Ngo recognized that both the State and the trial
court had also misstated the law at the very beginning of the case. Id. The court noted that the jury was affirmatively told, on three occasions,
twice by [the State] and once by the trial judge, that it need not return a
unanimous verdict. Id.

Furthermore, unlike Ngo,
where two of the offenses were mutually exclusive, none of the four acts of
aggravated assault in this case were mutually exclusive. Instead, this case is
similar to two recent cases finding that erroneous disjunctive charges were not
egregious harm. See Marinos, --- S.W.3d ---, 2006 WL 66435 (finding no
egregious harm from erroneously submitting aggravated bodily injury assault and
aggravated assault by threat disjunctively); Martinez v. State, ---
S.W.3d ---, 2006 WL 66659 (Tex. App.Houston [1st Dist.] Jan. 12, 2006, pet. filed)
(finding no egregious harm from erroneously submitting sexual contact with complainants
sexual organ and with complainants anus disjunctively).

Additionally, the state of
the evidence, including contested issues, persuades us that the charge error
did not deny Gonzales a fair trial. It was not contested that the complainant
suffered severe bruising and bleeding about her eyes (including a right eye
orbital blow-out fracture), a bleeding nose, scratching and bruising on her
throat, and a cut on her shoulder blade that required stitches on the night of
the occasion in question. Photographs amply demonstrated these injuries, and
the bloody knife that police found in the front yard was in evidence. The
contested issue at trial was whether Gonzales inflicted those injuries or
whether they were self-inflicted, which was Gonzaless defensive theory. The
charge error could not have affected this contested issue. The jury was faced
with two mutually exclusive theories: the States theory that Gonzales
inflicted the complainants injuries, or the defense theory that those injuries
were self-inflicted. An individual juror would either have found that Gonzales
committed the aggravated assaults or that he had not assaulted the complainant
at all. See Marinos, --- S.W.3d at ---, 2006 WL 66435, at *6; Martinez, --- S.W.3d at ---, 2006 WL 66659, at *5. In finding Gonzales guilty of
aggravated assault, the jury plainly accepted the States theory.[8]

The charge error did not
deny Gonzales a fair trial, go to the very basis of the case, or affect
Gonzaless defensive theory. We conclude, therefore, that Gonzales did not
suffer egregious harm as a result of the charge error. Issue one in each
appeal is overruled.

Sufficiency of the Evidence

 In each appeal, Gonzales
challenges the sufficiency of the evidence. In No. 10-00222-CR, he asserts
that the evidence is legally and factually insufficient to sustain the
aggravated assault conviction because there is no or insufficient evidence to
show that a knife was used or exhibited as a deadly weapon. In No.
10-00223-CR, Gonzales asserts that the evidence is legally and factually
insufficient to sustain the aggravated assault conviction because there is no or
insufficient evidence to show that the complainant suffered serious bodily
injury as a result of being struck by Gonzaless hand or elbow.

When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of a penal offense, we must
determine whether, after viewing all the evidence in the light most favorable
to the verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The
standard is the same for both direct and circumstantial evidence cases. Kutzner
v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

We do not resolve any conflict of fact
or assign credibility to the witnesses, as this was the function of the trier
of fact. See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Instead, our duty is
to determine if the findings of the trier of fact are rational by viewing all
of the evidence admitted at trial in the light most favorable to the verdict. Adelman,
828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are
resolved in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); Matson, 819 S.W.2d at 843.

In a factual sufficiency review, we view all of the
evidence in a neutral light and consider only whether a jury was rationally
justified in finding guilt beyond a reasonable doubt. Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004). However, there are two ways in
which the evidence may be insufficient. Id. First, when considered by
itself, evidence supporting the verdict may be too weak to support the finding
of guilt beyond a reasonable doubt. Id. Second, there may be both
evidence supporting the verdict and evidence contrary to the verdict. Id. Weighing all the evidence under this balancing scale, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met, so the guilty verdict should not stand. Id. at 485. This
standard acknowledges that evidence of guilt can preponderate in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Id. Stated another way, evidence supporting guilt
can outweigh the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard. Id.

Zuniga also reminds us that we must defer to
the jurys determination. See id. at 481 (citing Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). The jury determines the
credibility of the witnesses and may believe all, some, or none of the
testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App.
1991). It is the jury that accepts or rejects reasonably equal competing
theories of a case. Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001). The evidence is not factually insufficient merely because
the factfinder resolved conflicting views of evidence in favor of the State. Cain,
958 S.W.2d at 410.

Knife as a Deadly Weapon

The knife at issue was a kitchen knife
that a police officer and a physician said was capable of causing death or
serious bodily injury. The record contains a photograph of the knife. The
complainant testified that Gonzales forced her to sit on the toilet and perform
oral sex on him while he held the knife to her throat and also poked her in the
chest with it. Gonzales cut her on the shoulder blade with the knife while he
was slapping her with it. This evidence is legally and factually sufficient
to support a finding that the knife was used or exhibited as a deadly weapon
during the aggravated assault. We overrule issues two and three in No. 10-00222-CR.

Serious Bodily Injury

Serious bodily injury means bodily
injury that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any bodily member or organ. Tex. Pen.
Code Ann. 1.07 (46) (Vernon Supp. 2005). In determining whether the
evidence supports a finding of serious bodily injury, the relevant issue is the
quality of the injury as it was inflicted, not the quality of the injury after
its effects are ameliorated with medical treatment. See Brown v. State,
605 S.W.2d 572, 575 (Tex. Crim. App. 1980); Boney v. State, 572 S.W.2d
529, 531-32 (Tex. Crim. App. 1978).

The complainant testified that Gonzales
hit her in the face multiple times with his hands and elbows and choked her.
She said that after Gonzales hit her in the face with his hands and elbows, she
lost consciousness briefly. The neighbor whose house the complainant fled to
said that she appeared to have a concussion, collapsed on the neighbors couch,
and kind of passed out. The complainants treating physician testified that
she had lacerations, multiple bruises, a right orbital blow-out fracture, and a
closed-head injury (a concussion). He said the orbital fracture is a dangerous
injury because it is caused by a pretty good force and is places the victim
at risk for head injury, brain damage, and potentially death. He also said
that the complainants reported loss of consciousness showed significant injury
from either a blow to the head or choking. He concluded that the injury to the
complainants face and head created a substantial risk of death, that the
complainant was seriously injured, and that the complainants serious bodily
injuries could have been caused by hands and elbows. On cross-examination, the
physician admitted that after he examined the complainant and diagnostic
tests had been performed, he did not think she had a serious risk of death. He
also was not aware if she had suffered any permanent disfigurement or loss or
impairment. 

This evidence is legally and factually
sufficient to support a finding that the
complainant suffered serious bodily injury as a result of being struck by
Gonzaless hand or elbow.
See Brown, 605 S.W.2d at 575 (broken nose was serious bodily injury
because it would be disfigured and impaired if not treated); Dusek v. State,
978 S.W.2d 129, 133 (Tex. App.Austin 1998, pet. refd) (broken leg was serious
bodily injury). We overrule issues two and three in No. 10-00223-CR.

One Judgment and Conviction, or Two?

 We are left with one issue
of unassigned error resulting from the erroneous charge that we have found to
be harmless.[9]
After the jury returned its punishment decision, the trial court, after
remarking to Gonzales that the jury had found him guilty in Cause No. 2002-274-C
and in Cause No. 2003-689-C (and stating those causes having been tried by
agreement of the parties together), sentenced Gonzales: It is the sentence
of the Court that you be confined to the Texas Department of Criminal Justice,
Institutional Division for a term of twenty years and fined ten thousand
dollars.

However, two identical judgments of
convictionone in each trial court causewere entered by the trial court on the
one aggravated assault guilty verdict. With two judgments and each reflecting
a conviction, are there two convictions? Was Gonzales convicted twice for the
same offense? Is he serving two sentences, one for each judgment? This issue
and the error are mostly academic in this case because there appears to be no present
harm to Gonzales, but we believe that it warrants correction because the State
and the trial court considered there to have been the commission of one
aggravated assault, the jury charge submitted it as such, and the jury returned
one verdict of guilty. There should thus be one conviction and one judgment showing
that one conviction, rather than two.[10]

 The next questions to
answer are which aggravated assault offense was Gonzales convicted of, and which
judgment should be vacated as a remedy. We held above that Gonzales was
charged with the commission of four aggravated assaults, but the State, the trial
court, and the jury charge treated the four offenses as one. And because of the
erroneous jury charge, we do not know if the jury found Gonzales guilty of one,
two, three, or four aggravated assault offenses. All we know is that he was
found guilty of aggravated assault.

 Not long ago we addressed a
meritorious double jeopardy claim and reviewed the competing most serious
offense test in Ex parte Pena and the most serious punishment test in
Landers v. State to determine the proper remedy. See Harris v.
State, 34 S.W.3d 609, 612-13 (Tex. App.Waco 2000, pet. refd) (discussing Ex
parte Pena, 820 S.W.2d 806 (Tex. Crim. App. 1991), and Landers v. State,
957 S.W.2d 558 (Tex. Crim. App. 1997)); see also Ochoa v. State, 982
S.W.2d 904, 908 (Tex. Crim. App. 1998) (when jury improperly convicts accused
of greater offense and lesser-included offense, proper remedy is to reform
judgment by vacating lesser conviction and sentence). But because we have four
aggravated assault offenses, three of which include deadly weapon allegations,[11]
none of these tests provide an answer. Ex parte Pena discusses the
various methods that had been used to determine which conviction to uphold,
including the offense that was alleged first in the indictment. Ex parte
Pena, 820 S.W.2d at 808 (citing Beaupre v. State, 526 S.W.2d 811
(Tex. Crim. App. 1975)). Under the circumstances in these appeals, we conclude
that the conviction for the offense with the most serious punishment that was
alleged first in the indictment is the conviction that should be upheld.

 Count 3 of the first
indictment in Cause No. 2002-274-C charged Gonzales with bodily injury
aggravated assault and the use of a deadly weapon in cutting the complainant
with a deadly weapon (knife). Accordingly, we affirm the judgment of
conviction for this offense in Cause No. 2002-274-C, and we vacate the judgment
of conviction in Cause No. 2003-689-C.

Conclusion

 We overrule all of
Gonzaless issues in each appeal. We vacate the trial courts judgment in Cause No. 2003-689-C, but we affirm the trial courts
judgment in Cause No.
2002-274-C.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

 (Chief
Justice Gray dissenting)

 (Dissenting
opinion to follow)

One
judgment affirmed, one judgment vacated

Opinion
delivered and filed April 5, 2006

Publish

[CR25]

 [1] A
defendant may be prosecuted in a single criminal action for all offenses
arising out of the same criminal episode. Tex.
Pen. Code Ann. 3.02(a) (Vernon 2003). But each count (offense) is
submitted to the jury in a separate verdict. Tex.
Code Crim. Proc. Ann. art. 37.07, 1(c) (Vernon Supp. 2005). While the
common law rule is one conviction per indictment, multiple convictions are
permissible either based upon one charging instrument or several as long as the
offenses meet the Penal Codes criminal episode definition and are tried in a
single trial. Watson v. State, 900 S.W.2d 60, 63 (Tex. Crim. App. 1995)
(citing LaPorte v. State, 840 S.W.2d 412, 413 (Tex. Crim. App. 1992)).

 [2] The
term "count" is used to charge a separate offense; a paragraph is a
portion of a count and charges a method of committing an offense. Watkins
v. State, 946 S.W.2d 594, 601 (Tex. AppFort Worth 1997, pet. refd); see
Tex. Code Crim. Proc. Ann. art.
21.24 (Vernon 1989). The substance of the allegation, rather than its label,
determines whether it is a count or a paragraph. Watkins, 946 S.W.2d at
601.

[3] The
jury charge generally instructed the jury that its verdict must be by unanimous
vote. 

 

 [4] The
State does not address how the single verdict form and disjunctive submission, allowing
for only one conviction, resulted in two judgments of conviction. (States
Brief at 8).

 

 [5] These
Penal Code provisions are the same as those in effect at the time of the
offenses.

 [6] Archie
involved a double jeopardy claim premised on the States alleged failure to
elect which of the two assault counts it would proceed on, but its analysis on
how many assaultive offenses occurred is consistent with this opinion.

 [7] We
recognize that some courts would analyze this kind of error for harm under Rule
of Appellate Procedure 44.2(a). See Tex.
R. App. P. 44.2(a); see, e.g., Warner v. State, 2005 WL 2313591,
at *4 (Tex. App.Austin Sept. 22, 2005, pet. granted) (mem. op.) (not
designated for publication); Dixon v. State, 171 S.W.3d 432, 435 (Tex.
App.Houston [14th Dist.] 2005, pet. refd). But Ngo and subsequent
similar cases involving unpreserved jury charge error affecting unanimity apply
only the egregious harm test. See Ngo, 175 S.W.3d at 750-52; Marinos, --- S.W.3d at
---, 2006 WL 66435, at *5-7; Martinez v. State, --- S.W.3d ---,
---, 2006 WL 66659, at *3-6 (Tex. App.Houston [1st Dist.] Jan. 12, 2006, pet.
filed). We will do the same.

 [8] Also,
the error benefited Gonzales because he was subject to conviction for four
offenses, and the States failure to make an election benefits Gonzales by
protecting him against future prosecution. See Rodriguez v. State, 104
S.W.3d 87, 92 (Tex. Crim. App. 2003); Ex parte Goodbread, 967 S.W.2d
859, 860-61 (Tex. Crim. App. 1998). In a motion for new trial, Gonzales
recognized that the indictments allege four offenses.

 [9] We
have authority to entertain unassigned error. See Sanchez v. State, 182
S.W.3d 34, 58-64 (Tex. App.San Antonio 2005, pet. filed) (opinion by Judge
John F. Onion, Jr.) (sustaining unassigned error of trial courts erroneous
submission of ten separate offenses disjunctively with a general verdict, which
created the possibility of a non-unanimous jury verdict) (citing Rezac
v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); Perry
v. State, 703 S.W.2d 668, 670 (Tex. Crim. App. 1986); Carter v. State,
656 S.W.2d 468, 468-70 (Tex. Crim. App. 1983)). For example, it
is well settled that we have the authority to review unpreserved
fundamental charge error. Saldano v. State, 70
S.W.3d 873, 887 (Tex. Crim. App. 2002) (The courts of every jurisdiction in
this country have some doctrine that permits appellate courts to consider
claims that such fundamental rights were violated without objection. . . . One
such class of fundamental errors has been recognized by the legislature. A
statute permits our appellate courts to consider claims that an error in the
courts charge to the jury, to which no objection was made, was so grave as to
deny a defendant a fair trial.) (citing Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 1981)).

 [10] A judgment is the written declaration
of the trial court showing the conviction or acquittal of the defendant. Tex. Code Crim. Proc. Ann. art. 42.01,
 1 (Vernon Supp. 2005). However, the written judgment is not itself the
conviction; it is only evidence of the conviction. A conviction occurs when
the defendant is adjudged guilty by the pronouncement of sentence. 4 Barry P. Helft & John M. Schmolesky, Texas
Criminal Practice Guide 81.01[1][a] (2005); see Hurley v. State,
130 S.W.3d 501, 505 (Tex. App.Dallas 2004, no pet.) (whatever
else a conviction may be, it must include an adjudication of guilt); Ex parte Aviles, 78 S.W.3d 677, 685 (Tex. App.Austin
2002, no pet.) (judgment in criminal case merely documents fact of, and certain
important events associated with, process leading to conviction or acquittal).

[11] An
affirmative deadly weapon finding affects a convicted persons
parole-eligibility date, generally requiring that one-half of the sentence be
served for parole eligibility. See Tex.
Govt Code Ann. 508.145(d) (Vernon Supp. 2005); Tex. Code Crim. Proc. Ann. art. 42.12,
 3g(a)(2) (Vernon Supp. 2005).